**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ———————————————— ) | |
| **RON ANDERSON and ANDERSON** ) | |
| **MOBILE ESTATES, INC.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Civil Action No.** |
| ) | **12-12173-FDS** |
| **MARY ELIZABETH HEFFERNAN,** ) | |
| **Secretary, Massachusetts Office of** ) | |
| **Office of Public Safety and Security,** ) | |
| **and MICHELE M. LEONHART,** ) | |
| **Administrator, United States Drug** ) | |
| **Enforcement Administration,** ) | |
| ) | |
| **Defendants.** ) | |
| ————————————————) | |

**MEMORANDUM AND ORDER ON DEFENDANTS' MOTIONS TO DISMISS**
**AND PLAINTIFFS' MOTION TO AMEND**

**SAYLOR, J.**

This is a case for property damage arising out of a traffic stop and search.  Plaintiffs Ron

Anderson and Anderson Mobile Estates ("AME") are in the business of manufacturing and

renting luxury trailers, which are principally used by movie stars, directors, and others working

on location.  Plaintiffs allege that one of their trailers was damaged by a tow truck operator,

Massachusetts state troopers, and DEA agents during an investigative stop and search.  They

have sued defendants Mary Elizabeth Heffernan and Michele Leonhart in their official capacities

as secretary of public safety for Massachusetts and DEA administrator, respectively.

Defendants Heffernan and Leonhart have each moved to dismiss under Fed. R. Civ. P.

12(b)(1) for lack of subject-matter jurisdiction and Fed. R. Civ. P. 12(b)(6) for failure to state a

claim upon which relief can be granted.  Plaintiffs subsequently moved to amend the complaint

and stay the adjudication of the defendants' motions until further discovery is conducted.  For the reasons set forth below, the motion to stay will be denied, the motions to dismiss will be granted, and the motion to amend the complaint will be granted.

I.    **Background**

    A.    **Factual Background**

AME manufactures and rents luxury mobile trailers, which are principally used in the entertainment industry to provide on-location housing for movie stars, directors, and others working on location.  (Compl. ¶ 6).  The roof of the trailers can be raised to create a two-story living space; this feature is controlled by a computer system that requires specialized knowledge to operate.  (*Id.* at ¶ 8).

On August 9, 2010, one of AME's trailers was being towed by a truck driven by an AME employee, Melissa Elliott, on the Massachusetts Turnpike.  (*Id.* at ¶ 10).  The vehicle and trailer were stopped by Massachusetts state troopers, who placed Elliott under arrest.  (*Id.*).  The troopers requested a tow truck to take the trailer away to a secure location.  (*Id.* at ¶ 11).  At some point while Elliott was in custody, DEA agents arrived on scene.  (*Id.* at ¶ 12).  The DEA agents and the state troopers ordered the tow truck operator to raise the roof of the trailer; the tow truck operator did not know how to operate the trailer roof system, and did not contact AME for assistance.  (*Id.* at ¶ 13).  In order to comply with the order and raise the roof, the tow truck operator utilized an emergency override.  (*Id.* at ¶ 16).

After the trailer was removed to a secure maintenance facility, DEA agents and state troopers searched the trailer.  (*Id.* at ¶ 17).  During the course of these events, the trailer was significantly damaged, rendering it inoperable for a considerable period of time.  (*Id.* at ¶ 18).

The direct repairs to the trailer cost AME at least $70,000, and AME estimates that it lost at least $200,000 in income due to the inability to rent the trailer.

### B.      Procedural Background

In July 2012, AME and its principal owner, Ron Anderson, brought suit in the Superior Court of Suffolk County against (1) Mary Elizabeth Heffernan, in her official capacity as the Secretary of the Massachusetts Executive Office of Public Safety and Security, and (2) Michelle Leonhart, in her official capacity as Administrator of the United States Drug Enforcement Administration.  AME brought claims under the Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12 §§11H and 11I; the Massachusetts Tort Claims Act, Mass. Gen. Laws ch. 258 §1 *et seq.*; 42 U.S.C. § 1983; and the Federal Tort Claims Act (FTCA), 28 U.S.C. §2674 *et seq.*  On November 20, defendants removed the case to this Court.

Both defendants have moved to dismiss the claims pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  In response, plaintiffs moved to stay the adjudication of the motions until they received certain public records they had requested from the Massachusetts state government. Plaintiffs also moved to amend the complaint to add "John Doe" state trooper and DEA agent defendants.

## II.      Standard of Review

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom."  *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)).  To survive a motion to dismiss, the complaint must state a claim that is plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007).  That is, "[f]actual allegations must be enough to raise a right to relief above the

speculative level, . . . on the assumption that all the allegations in the complaint are true (even if

doubtful in fact)."  *Id.* at 555 (citations omitted).  "The plausibility standard is not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).

Dismissal is appropriate if plaintiff's well-pleaded facts do not "possess enough heft to show that

plaintiff is entitled to relief."  *Ruiz Rivera v. Pfizer Pharms., LLC*, 521 F.3d 76, 84 (1st Cir.

2008) (quotations and original alterations omitted).

## III.   Analysis

### A.   Massachusetts Civil Rights Act Claims

#### 1.   Defendant Leonhart

It is well-established that a suit against a federal officer in her official capacity is a suit

directly against the United States and is therefore subject to the doctrine of sovereign immunity.

*Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *McCloskey v. Mueller*, 446 F.3d 262, 271-72

(1st Cir. 2006).  Under the doctrine of sovereign immunity, the Court lacks subject-matter

jurisdiction over a suit against the United States unless the government has explicitly waived its

immunity.  *See United States v. Mitchell*, 445 U.S. 535, 538 (1980); *FDIC v. Meyer*, 510 U.S.

471, 475 (1994) ("Absent a waiver, sovereign immunity shields the federal government and its

agencies from suit.").   A waiver of sovereign immunity "must be unequivocally expressed in the

statutory text . . . and will not be implied."  *Lane v. Pena*, 518 U.S. 187, 192 (1996).

There are no allegations in the complaint against Leonhart in her individual capacity.  All

of the allegations concern the actions of DEA agents (who, presumably, were under her

supervision), but there are no allegations that she was present for, or even aware of, the search of

the trailer.  The complaint must therefore be read as bringing claims against Leonhart solely in

her official capacity.  As a federal officer sued in her official capacity, Leonhart is covered by

the sovereign immunity of the United States.  *See Ruiz-Rivera v. IRS*, 209 F.2d 24, 28 (1st Cir.

2000) (constitutional claims against federal officers in their official capacities are barred).  The

United States has not waived its sovereign immunity for claims brought pursuant to the

Massachusetts Civil Rights Act.  *See Dasey v. Anderson*, 304 F.3d 148 (1st Cir. 2002) (holding

that sovereign immunity did not present an obstacle to claims under the Massachusetts Civil

Rights Act for officers sued in their *individual* capacities).

Accordingly, the Court lacks subject-matter jurisdiction over the claims against Leonhart

under the Massachusetts Civil Rights Act.

## 2.    **Defendant Heffernan**

The Massachusetts Civil Rights Act prohibits interference with the exercise or enjoyment

of rights secured by the federal or state constitution or laws by means of "threats, intimidation or

coercion."  Mass. Gen. Laws ch. 12, §§ 11H and 11I.[1]  However, only a "person" is subject to

---

[1] Mass. Gen. Laws ch. 12, § 11H provides:

> Whenever any person . . . interfere [or attempt to interfere] by threats, intimidation or coercion,
> with the exercise or enjoyment by any other person . . . of rights secured by the constitution or
> laws of the United States[ or of the Commonwealth], the attorney general may bring a civil action
> for injunctive or other appropriate equitable relief in order to protect the peaceable exercise or
> enjoyment of the right or rights secured. . . ."

Mass. Gen. Laws ch. 12, § 11I provides:

> Any person whose exercise or enjoyment of rights secured by the constitution or laws of the United States[
> or of the Commonwealth] has been interfered with, or attempted to be interfered with, as described in
> section 11H, may institute and prosecute in his own name and on his own behalf a civil action for injunctive
> and other appropriate equitable relief as provided for in said section, including the award of compensatory
> money damages.

liability under the statute.  *See Commonwealth v. Elm Medical Laboratories, Inc.*, 33 Mass. App.

Ct. 71, 76-77 (1992) (holding that by enacting the state Civil Rights Act, the legislature did not

intend to abolish sovereign immunity for the acts described in §§11H and 11I); *see also Kelley v.

Laforce*, 288 F.3d 1, 11 (1st Cir. 2002) (citing *Howcroft v. City of Peabody*, 51 Mass. App. Ct.

573, 591-92 (2001) (concluding that a municipality is not a "person" within the terms of the

Massachusetts Civil Rights Act)).[2]  It is well-established that "the Commonwealth, including its

agencies, is not a 'person' subject to suit . . . ."  *Williams v. O'Brien*, 78 Mass. App. Ct. 169, 173

(2010).  Therefore, Heffernan is not subject to suit in her official capacity as the secretary of an

executive department in the Commonwealth.

As with Leonhart, there are no allegations in the complaint against Heffernan in her

individual capacity.  All of the allegations concern the actions of state troopers who were

presumably under her supervision, but there are no allegations that she was present for, or even

aware of, the search of the trailer.  Therefore, the complaint must be read as bringing claims

against Heffernan in her official capacity.  Because such claims are not available, at least not

pursuant to the Massachusetts Civil Rights Act, the Court lacks subject-matter jurisdiction over

them.

Accordingly, the Court lacks subject-matter jurisdiction over the claims against

Heffernan under the Massachusetts Civil Rights Act.

---

[2] The word "person" in such a statute is not ordinarily construed to include the state.  *See Kilbane v. Secretary of Human Servs.*, 14 Mass. App. Ct. 286, 287-288 (1982) (citing cases); *see also Will v. Michigan Dept. of State Police*, 491 U.S. 58, 64 (1989) ("in common usage, the term 'person' does not include the sovereign, [and] statutes employing the [word] are ordinarily construed to exclude it").  Moreover, the definition of "person" under Mass. Gen. Laws ch. 4, § 7, clause 23, includes corporations, societies, associations, and partnerships, but not the Commonwealth or its departments.

B.    **Massachusetts Tort Claims Act Claims**

1.    **Defendant Leonhart**

The same principles of sovereign immunity apply to claims under the Massachusetts Tort Claims Act against a federal officer in her official capacity.  Again, there are no allegations in the complaint that can be read to assert claims against Leonhart in her individual capacity.  The United States has likewise not waived its sovereign immunity for claims under the Massachusetts Tort Claims Act.  Accordingly, the Court lacks subject-matter jurisdiction over the claims against Leonhart under the Massachusetts Tort Claims Act.

2.    **Defendant Heffernan**

Under the Eleventh Amendment, "states are immune . . . from private suit in federal courts, absent their consent" for claims seeking money damages.  *Greenless v. Almond*, 277 F.3d 601, 606 (1st Cir. 2002).  This immunity extends to any entity that is an "arm of the state." *Wojcik v. Massachusetts State Lottery Comm'n*, 300 F.3d 92, 99 (1st Cir. 2002).

The Massachusetts Tort Claims Act operates as a limited waiver of Eleventh Amendment immunity.  The relevant sections provide that "public employers shall be liable . . . in the same manner and to the same extent as a private individual. . . . [and] [t]he superior court shall have jurisdiction of all civil actions brought against a public employer."  Mass. Gen. Laws ch. 258, §§ 2, 3.  It is well-established, however, that "[a] State's constitutional interest in immunity encompasses not merely whether it may be sued, but where it may be sued." *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 98 (1984).  Importantly, the "'language [of § 3 cited above] does not refer to actions in federal court, hence failing to meet the strict standard of eleventh amendment waiver enunciated in *Atascadero*.'"  *Rivera*, 16 F. Supp. 2d at 87-88

7

(quoting *Della Grotta v. Rhode Island*, 781 F.2d 343, 346 (1st Cir. 1986)).  Therefore, as a federal court, this Court lacks subject-matter jurisdiction over claims against the Commonwealth of Massachusetts under the Massachusetts Tort Claims Act.

The plaintiffs' claims under the Massachusetts Tort Claims Act are brought against Heffernan in name only.  Because the allegations concern her actions in an official capacity, the claims must be read as having been brought against the Commonwealth itself.  Accordingly, the Court lacks subject-matter jurisdiction over the claims against Heffernan under the Massachusetts Tort Claims Act.

### C.   Section 1983 Claims

#### 1.   Defendant Leonhart

Section 1983 is not itself a source of substantive rights, but rather provides a means for vindicating rights conferred by the Constitution or laws of the United States.  *See Graham v. Connor*, 490 U.S. 386, 393-94 (1989).  However, § 1983 provides such a remedy against persons acting under the color of *state* law.  *See West v. Atkins*, 487 U.S. 42, 48-49 (1988); *see also Chatman v. Hernandez*, 805 F.2d 453,455 (1st Cir. 1986) (claim against federal defendants fails to state a claim and is beyond scope of § 1983).[3]  It is clear that, as a DEA employee, Leonhart was, at all relevant times, operating under color of *federal* law.  *See* 21 U.S.C. § 878 (federal statute conferring enforcement powers upon DEA administrators); *see also Jean-Louis v.*

_____

[3] 42 U.S.C. § 1983 provides, in relevant part,

that every person who, under color of *any statute, ordinance, regulation, custom or usage, of any State or Territory* . . . , subjects, or causes to be subjected, any citizen of the Case United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in any action at law, suit in equity, or other proper proceedings for redress . . . ."

(emphasis added).

*Clifford, et al.*, No. 06-3972, 2008 WL 3479806, *4 (D.N.J. Aug. 12, 2008) (any action taken by DEA agents is under federal, not state law). Accordingly, the claims against Leonhart under § 1983 should be dismissed because they are not actionable.

It is well-established that the proper vehicle for a civil-rights claim against a person acting under color of federal law is a so-called *Bivens* action. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). However, it also well-established that *Bivens* only authorizes suits against federal officers in their individual capacities, because the doctrine of sovereign immunity bars suits against the federal government, its agencies, and federal agents acting in their official capacities. *See Bivens*, 403 U.S. at 389; *Tapia-Tapia v. Potter*, 322 F.3d 742, 746 (1st Cir. 2003) (holding that no *Bivens* remedy is available against the United States, federal agencies, or federal officers in their official capacities). Therefore, even if the Court were to construe plaintiffs § 1983 claims against Leonhart as *Bivens* claims, the Court would lack subject-matter jurisdiction over them, because those claims are not brought against her in her individual capacity.

Accordingly, because Leonhart was not acting under color of state law and because the complaint contains no claim of a violation of federal civil rights against her in her individual capacity, the § 1983 claims against her will be dismissed.

### 2.   Defendant Heffernan

Like the Massachusetts Civil Rights Act, § 1983 provides a remedy for violations of federal civil rights against "*persons*" acting under the color of state law. "It is settled beyond peradventure, however, that neither a state agency nor a state official acting in h[er] official capacity may be sued for damages in a section 1983 action." *Johnson v. Rodriguez*, 943 F.2d

104, 108 (1st Cir. 1991) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)). Again, the complaint contains no allegations against Heffernan in her individual capacity, only in her official capacity.  Therefore, the Court lacks subject-matter jurisdiction over any § 1983 claims against Heffernan.

Accordingly, because the complaint contains no claim of a violation of federal civil rights against Heffernan in her individual capacity, the §1983 claims against her will be dismissed.

## D.    FTCA Claims

### 1.    Defendant Leonhart

By passing the Federal Tort Claims Act, Congress waived the sovereign immunity of the United States for claims that fall within the scope of the statute.  *See* 28 U.S.C. §§ 1346(b), 2671-2680; *Barrett ex rel. Estate of Barrett v. United States*, 462 F.3d 28, 36 (1st Cir. 2006).[4] However, a plaintiff may not institute a claim under the FTCA in a federal district court until (1) the plaintiff has filed an administrative claim with the "appropriate Federal agency," and (2) the agency finally denies the administrative claim or six months pass without a final denial of the administrative claim, whichever comes first.  28 U.S.C. § 2675(a).  This administrative remedy exhaustion requirement is jurisdictional.  *See Barrett*, 462 F.3d at 38; *see also McNeil v. United States*, 508 U.S. 106, 113 (1993) ("The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies.").

---

[4] Subject to some exceptions, the FTCA provides a right of action against the United States

for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).

Here, plaintiffs do not allege, nor is there any other indication, that they have exhausted their administrative remedies under the FTCA.  The complaint therefore fails to state a claim under the FTCA.  Furthermore, because the United States is the only proper defendant in an action under the FTCA, *see* U.S.C. §§ 1346(b), 2674, 2679; *McCloskey v. Mueller*, 446 F.3d 262, 266 (1st Cir. 2006), any claim under the FTCA against Leonhart is improper.  Accordingly, the Court will dismiss the FTCA claims against Leonhart.

### 2.   Defendant Heffernan

With respect to the claims under the FTCA against Heffernan, the plaintiffs have also not alleged that they have exhausted administrative remedies.  Furthermore, Heffernan is an employee of the Massachusetts Executive Office of Public Safety and Security and therefore not a party that can be sued under the FTCA.  She is not the United States, is not an employee of the United States government, and is not subject to jurisdiction pursuant to FTCA.  Accordingly, the Court will dismiss the FTCA claims against Heffernan.

### E.   Motion to Amend

Confronted with the defendants' motions to dismiss, plaintiffs moved for leave to amend the complaint and add as defendants the state troopers and DEA agents who actually effectuated the stop and search of the trailer at issue, identified only as various "John Does."  Plaintiffs submit that they will substitute the real names of the "John Doe" defendants when the Commonwealth responds to their public-records request.

Fed. R. Civ. P. 15(a)(2) provides that leave to amend pleadings should be "freely given . . . when justice so requires."  Leave to amend may be denied for reasons such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies

by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Here, the named defendants have not contended that plaintiffs unduly delayed their motion to amend or exercised bad faith in so moving.  Indeed, it seems that the amendment sought, combined with the Court's ruling on the motions to dismiss, would have the effect of substituting the correct individual defendants, at least with respect to the § 1983 and potential *Bivens* claims.   Accordingly, the Court will permit the plaintiffs leave to amend their complaint and add the requested John Doe defendants.

**IV.**     **Conclusion**

For the foregoing reasons, plaintiffs' motion to stay is DENIED; defendants' motions to dismiss are GRANTED; and the motion to amend is GRANTED.  The amended complaint is deemed filed as of today, April 9, 2013.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated:  April 9, 2013

12